IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAIR HOUSING CENTER OF      )
WASHTENAW COUNTY, INC., a    )
Michigan non-profit corporation, d/b/a  )
FAIR HOUSING CENTER OF      )    Civil Action No. 5:09-cv-12815
SOUTHEASTERN MICHIGAN,    )
                           )
        Plaintiff,       )
                           )
      v.              )
                           )    SEAN F. COX
ACME INVESTMENTS, INC., a    )    United States District Judge
Michigan corporation; and LAURIE  )
COURTNEY,            )    Mona K. Majzoub
                           )    Magistrate Judge
        Defendants.     )
                           )
and                  )
                           )
UNITED STATES OF AMERICA,    )
                           )
        Plaintiff,       )
                           )
      v.              )
                           )
ACME INVESTMENTS, INC,     )
d/b/a IVANHOE HOUSE       )
APARTMENTS,           )
and LAURIE COURTNEY,     )
                           )
        Defendants.     )
_____)

## <u>CONSENT ORDER</u>

## I.  INTRODUCTION

1.  The Fair Housing Center of Washtenaw County, Inc., doing business as the Fair

Housing Center of Southeastern Michigan ("Fair Housing Center"), filed this action against

Acme Investments, Inc., d/b/a Ivanhoe House Apartments ("Acme"), and Laurie Courtney (collectively, "Defendants") for discriminating against, and continuing to discriminate against, African Americans at Ivanhoe House Apartments in Ann Arbor, Michigan in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 et seq., the Civil Rights Acts of 1866 and 1870, 42 U.S.C. §§ 1981 and 1982, and the Elliott-Larsen Civil Rights Act, M.C.L. § 37.2501 et seq.

2.  The United States filed an action against Acme and Laurie Courtney, U.S. District Court, Eastern District of Michigan, Civil Action No. 2:10-cv-10853, to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 et seq.

3. The court consolidated the actions of the Fair Housing Center and the United States (collectively, "Plaintiffs") under Civil Action No. 5:09-cv-12815.  Pursuant to the consent of the parties, this single Consent Order will resolve both actions.

4.  Specifically, Plaintiffs allege that Defendants are engaging in housing practices that discriminate on the basis of race or color, including:

    a.    Denying the availability of apartments for rent or inspection to African American persons while at the same time telling white persons about apartments available to rent or inspect;

    b.    Failing to provide African American persons information about the availability of apartments to rent or inspect that is full, complete, and consistent with the information provided to white persons;

    c.    Failing to provide to African American persons the same terms, conditions, or privileges related to the renting of apartments as are provided to white persons;

and

    d.      Refusing to accept or process applications by African American persons because of their race or color.

5.  Plaintiffs allege that through this conduct the Defendants refused to negotiate for the rental of, or otherwise made unavailable or denied housing to persons because of race or color, in violation of 42 U.S.C. § 3604(a); discriminated against persons in the terms, conditions, or privileges of rental, or in the provision of services or facilities in connection therewith, because of race or color, in violation of 42 U.S.C. § 3604(b); and discriminated by representing to persons because of race or color that dwellings were not available for inspection or rental when such dwellings were in fact so available, in violation of 42 U.S.C. § 3604(d).

6.  Defendants deny violating any law or engaging in any wrongful conduct of any type or nature as Plaintiffs allege in their actions.  This Consent Order is a compromise of disputed claims and is not an admission by Defendants, each of which expressly deny liability.

7.  Plaintiffs and Defendants have agreed that in order to avoid protracted and costly litigation, this controversy should be resolved without a trial.  Therefore, the parties consent to the entry of this Consent Order.

**ACCORDINGLY, It is hereby ADJUDGED, ORDERED and DECREED:**

## II.  GENERAL INJUNCTION

8.  Defendants, their officers, agents, employees, successors, and assigns, and all other persons in active concert or participation with them, are enjoined, with respect to the rental of dwellings, from:

    a.      Refusing to rent a dwelling, refusing or failing to provide or offer information

3

about a dwelling, refusing to negotiate for the rental of a dwelling, or otherwise

making unavailable or denying a dwelling to any person because of race or color;

b.      Discriminating against any person in the terms, conditions, or privileges of

renting a dwelling, or in the provision of services or facilities in connection

therewith, because of race or color; and

c.      Representing to persons because of race or color that any dwelling is not available

for inspection or rental when such dwelling is, in fact, so available.

### III.  NONDISCRIMINATION POLICY

9.  Acme shall prepare and implement a Nondiscrimination Policy regarding the rental of

dwelling units at Ivanhoe House Apartments that shall be applied equally to all actual and

prospective tenants, regardless of their race or color.

10.  Within ten (10) days of the entry of this Consent Order, Acme shall distribute the

Nondiscrimination Policy to all of its employees and agents, or anyone acting under their

direction, who have responsibility for showing, renting, or managing any and all dwelling units

at the Ivanhoe House Apartments, and this policy will be reviewed, along with a question and

answer session, with each employee, agent, or anyone acting under Defendants' direction, on an

annual basis thereafter.  The text of the Nondiscrimination Policy shall be consistent with

Appendix A.

### IV.  NOTICE TO PUBLIC OF NONDISCRIMINATION POLICY

11.  Within ten (10) days of the date of entry of this Consent Order, Acme shall take the

following steps to notify the public of its Nondiscrimination Policy for Ivanhoe House

Apartments:

4

a.    Prominently post in any office or area where there is rental activity and/or personal contact with applicants or prospective applicants at Ivanhoe House Apartments, a fair housing sign no smaller than ten (10) inches by fourteen (14) inches that indicates that all apartments are available for rent on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement.  Nothing in this provision requires Acme to affirmatively create any rental office at Ivanhoe House Apartments.

b.    Whenever any dwelling unit at Ivanhoe House Apartments is available for rent, Acme shall prominently post an easily readable "For Rent" or "Vacancy" at Ivanhoe House Apartments.  The sign or notice shall include the slogan "Equal Housing Opportunity" and/or the fair housing logo.  Such slogan and logo shall be prominently displayed and easily readable.

c.    Include the words "Equal Housing Opportunity" and/or the fair housing logo in all rental advertising conducted by Acme, its agents or employees, in newspapers, flyers, handouts, telephone directories, and other written materials; on radio, television, or other media broadcasts; and on all billboards, signs, pamphlets, brochures, and other promotional literature, provided that this requirement does not compel Acme, its agents, or employees to advertise in any of these media, but does require compliance with this provision whenever Acme, its agents, or employees so advertise.  The words and/or logo shall be prominently placed and easily readable.

d.    Include the following phrase in the standard rental application and the standard

5

rental agreement used for rental of dwelling units at Ivanhoe House Apartments in boldface type, using letters of equal or greater size to those of the text in the body of the document:

> We are an equal housing opportunity provider. We do not discriminate on the basis of race, color, sex, national origin, religion, disability, or familial status (having children under age 18).[1]

## V. TRAINING

12. Within ten (10) days of the entry of this Consent Order, Acme shall provide a copy of this Consent Order to its existing agents and employees involved in showing, renting, or managing any dwelling unit at Ivanhoe House Apartments. Acme shall secure a signed statement from each such existing agent or employee acknowledging that he or she has received and read the Consent Order and the Nondiscrimination Policy, has had the opportunity to have questions about the Consent Order and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Order and the Policy. This statement shall be as set forth in Appendix B.

---

[1] Acme may include, in its discretion, additional protected classes in this nondiscrimination statement.

13.   During the term of this Consent Order, within five (5) days after each new agent or employee of Acme becomes involved in showing, renting, or managing units at Ivanhoe House Apartments, Acme shall provide a copy of this Consent Order and the Nondiscrimination Policy to each such new agent or employee and secure a signed statement from each new agent or employee acknowledging that he or she has received and read the Consent Order and the Nondiscrimination Policy, has had the opportunity to have questions about the Consent Order and Nondiscrimination Policy answered, and agrees to abide by the relevant provisions of the Consent Order and the policy.  This statement shall be as set forth in Appendix B.

14.   Within sixty (60) days of the entry of this Consent Order, Acme's managers, officers, and/or trustees, and Acme's agents and employees involved in showing, renting, or managing any dwelling units at Ivanhoe House Apartments shall undergo in-person training on the Fair Housing Act, with specific emphasis on discrimination on the basis of race or color.  The training shall be conducted by an independent, qualified third party, approved in advance by the United States (which approval shall not be unreasonably withheld), and any expenses associated with this training shall be borne by Acme.  Acme shall obtain from the trainer certifications of attendance, executed by each individual who received the training, confirming their attendance. This confirmation shall include the name of the course, the name of the instructor, the date the course was taken, and the length of the course and/or time within which the course was completed.

15.   At a minimum, the training required in the preceding paragraph shall consist of the following:

a.      Instruction on the requirements of all applicable federal and state housing

7

discrimination laws; and

b.      A question and answer session for the purpose of reviewing the foregoing areas.

## VI.  NONDISCRIMINATORY STANDARDS AND PROCEDURES FOR SHOWING AVAILABLE DWELLING UNITS TO PROSPECTIVE TENANTS

16.  Within forty-five (45) days of the entry of this Consent Order, Acme shall develop and implement, with respect to dwelling units at the Ivanhoe House Apartments, objective, uniform, non-discriminatory standards and procedures for informing persons about and showing available dwelling units to prospective tenants.  Such standards and procedures shall be submitted to the United States for approval in advance of their implementation (which approval shall not be unreasonably withheld) and shall be consistent with the provisions of this Section. The standards and procedures shall be posted and prominently displayed in any office or area where there is rental activity and/or personal contact with applicants or prospective applicants, and a copy of these standards and procedures shall be made available upon request to any prospective applicant for the rental of a dwelling.  Nothing in this provision requires Acme to affirmatively create any rental office at Ivanhoe House Apartments.  For the duration of this Consent Order, these standards and procedures may be modified only if written notice is given to counsel for the United States at least thirty (30) days before the proposed modifications are to take effect and the United States makes no objection before the proposed modifications are to take effect.

17.  The nondiscriminatory standards and procedures discussed in Paragraph 16, above, shall include the use of the following documents, which Acme shall update as new information becomes available, and retain for the duration of the Consent Order:

8

a.      Guest Cards:  Acme shall ensure that, for all prospective tenants who inquire in person about dwelling units, a Guest Card is completed, either by the prospective tenant and/or Acme, that contains:

1.      The date of the prospective tenant's visit and the prospective tenant's name, address, daytime and evening telephone numbers;

2.      The race of the prospective tenant, based on Acme's good faith observation;

3.      The apartment size that the prospective tenant requests and the date on which the prospective tenant wishes to move;

4.      Whether the prospective tenant filled out an application;

5.      Whether the prospective tenant was invited to see available dwelling units and the address and unit number of each one shown and, if not, an explanation why not; and

6.      The names of all employees/agents who assisted the prospective tenant.

b.      Availability List:  Acme shall ensure that it maintains and timely updates an Availability List that includes the addresses and unit numbers of all dwelling units known to be available or reasonably expected to be available for rental within thirty (30) days, including the date on which Acme was first informed that each would be available or reasonably expected to be available for rental and the first date that each would be available or reasonably expected to be available for rental or occupancy by a new tenant.  Such Availability List may also include comments which may affect Acme's reasonable assessment of when a particular dwelling

9

unit would be available or reasonably expected to be available for rental, including but not limited to whether an existing tenant may change his or her decision to vacate the dwelling unit, whether the dwelling unit may require repair or renovation, or whether the existing tenant may require an extension of occupancy until new housing is made available.  Acme shall share the complete information on the Availability List with each person who visits or calls to inquire about the availability of dwelling units.

c.     Rental Applications:  Acme shall permit all persons who inquire about renting a dwelling unit the opportunity to apply for an apartment.  To the extent Acme rejects any application for housing, Acme shall provide, either on the application or on an attachment to the application, a written explanation why the applicant was not offered a tenancy, any supporting documentation, and the name of the employee who made the decision.  Defendants shall promptly notify such applicant of the rejection and the reason therefor.

### VII.  COMPLIANCE TESTING

18.  Acme shall implement a program of self-testing designed to detect and prevent unlawful discrimination at the Ivanhoe House Apartments.  Within sixty (60) days of the entry of this Consent Order, Acme shall enter into a contract with a provider to be agreed upon by Acme and the United States or, if they are unable to agree, to be selected by the Court, to develop and implement a program to test for potential race discrimination at the Ivanhoe House Apartments. The contract shall provide for a minimum of three (3) tests per year at Ivanhoe House Apartments for the duration of this Consent Order.  The test results will be provided to

10

Defendants and their counsel, to counsel for the United States,[2] and to the Fair Housing Center[3] and its counsel.[4]  If the United States believes that the test results indicate any fair housing compliance problems at the Ivanhoe House Apartments, the United States shall notify Defendants' counsel of any such problems and the basis therefore.  In the event that there is a dispute between the United States and the Defendants as to whether or what corrective action is required, the parties shall attempt to resolve such dispute according to the consultation provisions of Paragraph 34 below.  The Plaintiffs may also take steps to monitor Defendants' compliance with this Consent Order including, but not limited to, conducting fair housing tests at any office in which Defendants conduct rental activities.

### VIII.  REPORTING AND DOCUMENT RETENTION REQUIREMENTS

19.  Within ninety (90) days of the entry of this Consent Order, and every year thereafter for the duration of this Consent Order, Defendants shall deliver to counsel for the United States a report containing information about Defendants' compliance efforts during the preceding reporting period, including but not limited to:

    a.    Photographs of each office in which rental activity is conducted, showing the fair

---

[2]  All documents or other communications required by this Consent Order to be sent to counsel for the United States shall be sent by commercial (non-USPS) overnight delivery service addressed as follows:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, United States Department of Justice, 1800 G Street N.W., Suite 7002, Washington, D.C. 20006, Attn: DJ 175-37-343, or as otherwise directed by the United States.  Facsimile transmissions shall be sent to (202) 514-1116.

[3]  All documents or other communications required by this Consent Order to be sent to the Fair Housing Center shall be sent to Fair Housing Center of Southeastern Michigan, P.O. Box 7825, Ann Arbor, MI  48107.

4  All documents or other communications required by this Consent Order to be sent to counsel for the Fair Housing Center shall be sent to D. Scott Chang, Relman & Dane PLLC, 1225 19th Street NW, Suite 600, Washington DC 20036-2456.

housing signs and Nondiscrimination Standards and Procedures, pursuant to Sections IV and VI of this Consent Order; however, nothing in this provision requires Acme to affirmatively create any rental office at Ivanhoe House Apartments;

b.     Copies of standard rental applications and rental agreements that Acme provides to prospective tenants, pursuant to Section IV of this Consent Order;

c.     Copies of all Employee Acknowledgment forms and fair housing training certifications, pursuant to Section V of this Consent Order; and

d.     Copies of all completed Guest Cards, Availability Lists, Rental Applications, and other information (whether recorded by any means by either Acme, its employees or agents, or a prospective tenant) related to any inquiries regarding the availability of rental dwellings, maintained pursuant to Section VI of this Consent Order.

20.  During the period in which this Consent Order is in effect, Defendants shall preserve all records that are the source of, contain, or relate to any of the information pertinent to their obligations under this Consent Order, including, but not limited to, all guest cards, availability lists, waiting lists, rental applications, leases, rental roll ledgers, and occupancy lists.  Upon reasonable notice to counsel for Defendants, representatives of the United States shall be permitted to inspect and copy, at the United States' sole expense, all such records at any and all reasonable times or, upon request by the United States, Defendants shall provide copies of such documents at the United States' sole expense.

21.  During the period in which this Consent Order is in effect, Defendants shall notify

12

counsel for the United States in writing within fifteen (15) days of receipt of any written or oral complaint against Acme, its employees, or its agents regarding discrimination in housing.  If the complaint is written, Acme shall provide a copy of it with the notification.  The notification shall include the full details of the complaint, including the complainant's name, address, and telephone number.  Defendants shall also promptly provide the United States all information it may request concerning any such complaint and shall inform the United States within fifteen (15) days of the substance of any resolution of such complaint.

## IX.  MONETARY DAMAGES FOR AGGRIEVED PERSONS

22.  Acme shall pay a total of thirty-five thousand dollars ($35,000) for the purpose of paying monetary damages to the persons allegedly aggrieved by Defendants' conduct (hereinafter "aggrieved persons").  All checks for aggrieved persons shall be sent, via Federal Express, c/o Holly C. Lincoln, United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 1800 G Street, N.W., Suite 7013, Washington, D.C. 20006, for her to forward to the aggrieved persons.  The payments shall be made as follows:

A.     within ten (10) days of the entry of this Consent Order:

1.     twelve thousand and five hundred dollars ($12,500) to Doylan Jackson;

2.     twelve thousand and five hundred dollars ($12,500) to Rodney Boone;

3.      five thousand dollars ($5,000) to Lemont Gore; and

B.     on or before September 1, 2010, five thousand dollars ($5,000) to Lemont Gore.

23.     When counsel for the United States has received a check from Acme payable to an aggrieved person and a signed release in the form of Appendix C from the aggrieved person, counsel for the United States shall deliver the check to the aggrieved person and the original,

signed release to counsel for Defendants.  No aggrieved person shall be paid until he or she has executed and delivered to counsel for the United States a release in the form of Appendix C.

## X.  COMPENSATION TO THE FAIR HOUSING CENTER

24.  Acme shall pay a total of forty thousand dollars ($40,000) to the Fair Housing Center to resolve its claims for damages, attorney's fees, and costs.  This amount will be made in two payments as follows:  twenty-five thousand dollars ($25,000) on or before September 1, 2010, and fifteen thousand dollars ($15,000) on or before September 30, 2010.  Prior to receiving the first payment, the Fair Housing Center shall execute a release in the form of Appendix D.

## XI.  CIVIL PENALTY

25.  On or before September 30, 2010, Acme shall pay a total of seven thousand and five hundred dollars ($7,500) to the United States as a civil penalty, pursuant to 42 U.S.C. § 3614(d)(1)(C).  This payment shall be sent, via Federal Express, c/o Holly C. Lincoln, United States Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section, 1800 G Street, N.W., Suite 7013, Washington, D.C. 20006, in the form of a cashier's check payable to the "United States Treasury."

## XII.  ACQUISITION OR TRANSFER OF INTEREST IN RENTAL PROPERTIES

26.  If at any time while this Consent Order remains in effect, Acme decides to sell or otherwise transfer the entirety of its interest in Ivanhoe House Apartments to an unrelated party in an arms-length transaction,[5] it shall take the following steps:

---

[5]  For purposes of this Consent Order, "arms-length transaction" is defined as a transaction that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction.

14

a.     At least thirty (30) days prior to completion of the sale or transfer, provide each prospective purchaser or other transferee a copy of this Consent Order along with written notice that the subject property remains subject to Sections II-VIII and XII-XIV of the Order;

b.     At least thirty (30) days prior to completion of the sale or transfer, provide the United States written notice of its intent to sell or otherwise transfer Acme's interest in the property, along with a copy of the notice interest sent to each prospective purchaser or transferee, containing the latter's name, address, and telephone number;

c.     Within thirty (30) days following completion of the sale or other transfer, Acme shall provide the United States a copy of the documents memorializing the transfer in interest of the property; and

d.     Acme shall require the transferee, as a condition of the sale or other transfer, to agree in writing to perform all obligations and be liable for compliance with Sections II-VIII and XII-XIV of this Consent Order for the duration of the Order, with respect to the property.

27.  If Acme complies with Paragraph 26a-d, above, and transfers all of its ownership, management, or other financial interest in the Ivanhoe House Apartments to an arms-length purchaser or other transferee, Acme shall thereafter be relieved of its obligations under this Consent Order.

28.  If the proposed transfer of interest is not an arms-length transaction, Acme must comply with the requirements of Paragraph 26a-d of this Consent Order.  In addition, Acme shall

15

remain jointly and severally liable, along with the purchaser or other transferee, for any violations of Sections II-VII and XI-XII of the Consent Order for its duration.

29. If at any time while this Consent Order remains in effect, Acme decides to acquire an ownership, management, or other financial interest in any other residential rental property, either in whole or in part, it shall notify the United States in writing at least thirty (30) days before completion of the transaction, providing the name and address of the property and the identity of the manager of the property, and that property shall be subject to the provisions of this Consent Order for its duration. In addition, within thirty (30) days following completion of the purchase, Acme shall provide the United States (a) a statement specifying the nature of Defendants' interest in the property and a copy of the documents memorializing the acquisition of that interest; (b) the number of individual dwelling units at the property; (c) the names of any existing tenants; and (d) the race or color of each such tenant, based on Acme's, its employee's, or its agent's good faith observation.

30. If at any time while this Consent Order remains in effect, Laurie Courtney is employed in any capacity in connection with the rental of residential dwelling units at a location other than the Ivanhoe House Apartments, she shall, within thirty (30) days of starting such new employment, notify the United States in writing of her new employment, including the name of the property where she is employed and the name, address, and telephone number of her employer.

## XIII. SCOPE AND DURATION OF CONSENT ORDER

31. The provisions of this Consent Order shall apply to all Defendants, their officers, agents, employees, successors and assigns, and all persons acting in active concert or

participation with them.

32.  This Consent Order shall remain in effect for three (3) years after the date of its entry.

33.  The Court shall retain jurisdiction for the duration of this Consent Order to enforce its terms, after which time the case shall be dismissed with prejudice.  The United States may move the Court to extend the duration of the Consent Order in the interests of justice.

### XIV.  REMEDIES FOR NON-COMPLIANCE

34.  The Parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Order prior to bringing such matters to the Court for resolution.  However, in the event that the United States contends that there has been a failure by any of the Defendants, whether willful or otherwise, to perform in a timely manner any act required by this Consent Order or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform.

### XV.  TIME FOR PERFORMANCE

35.  Any time limits for performance imposed by this Consent Order may be extended by mutual written agreement of the parties.

### XVI.  COSTS OF LITIGATION

36.  Each party to this litigation will bear its own costs and attorneys' fees associated with this litigation.

17

**IT IS SO ORDERED** this 6th day of July, 2010.


s/ Sean F. Cox
UNITED STATES DISTRICT JUDGE


By their signatures below, the parties consent to the entry of this Consent Order.

**For the United States:**

BARBARA L. McQUADE                    THOMAS E. PEREZ
United States Attorney                Assistant Attorney General
                                      Civil Rights Division


*s/Judith E. Levy*                     *s/Holly Lincoln*
JUDITH E. LEVY                        STEVEN H. ROSENBAUM
Assistant United States Attorney      Chief
211 West Fort Street, Ste. 2001       TIMOTHY J. MORAN
Detroit, MI  48226                    Deputy Chief
Phone: (313) 226-9727                 HOLLY LINCOLN
Fax: (313) 226-3271                   Attorney
Email: judith.levy@usdoj.gov          Housing and Civil Enforcement Section
                                      Civil Rights Division
                                      U.S. Department of Justice
                                      950 Pennsylvania Avenue, N.W.
                                      Northwestern Building, 7th Floor
                                      Washington, D.C.  20530
                                      Phone: (202) 514-0553
                                      Fax: (202) 514-1116
                                      Email: holly.lincoln@usdoj.gov

18

**For the Fair Housing Center of Southeastern Michigan:**


 *s/Steven M. Dane (with consent)*
STEVEN M. DANE
D. SCOTT CHANG
RELMAN & DANE PLLC
1225 19th Street NW
Suite 600
Washington DC 20036-2456
Phone: (202) 728-1888
Fax: (202) 728-0848
Email: sdane@relmanlaw.com
        schang@relmanlaw.com


*s/Steve Tomkowiak (with consent)*
STEVE TOMKOWIAK (P40042)
LAW OFFICE OF STEVE TOMKOWIAK
29777 Telegraph Road, Suite 2500
Southfield, Michigan 48034
Phone:  (248) 543-1600
Fax:  (248) 543-1800 Fax
Email: stomk@sbcglobal.net


**For Defendants Acme Investments, Inc., d/b/a Ivanhoe House Apartments,
and Laurie Courtney:**


 *s/Stanley H. Pitts (with consent)*
STANLEY H. PITTS (P33519)
BRIAN QUINN (P66272)
HONIGMAN MILLER SCHWARTZ & COHN, LLP
222 N. Washington Square, Suite 400
Lansing, Michigan 48933
Phone:  (517) 377-0706
Fax:  (517) 364-9506
Email:  spitts@honigman.com
        bquinn@honigman.com

19

**Appendix A**

**NONDISCRIMINATION POLICY**

It is the policy of Acme Investments, Inc., d/b/a Ivanhoe House Apartments, to comply with Title VIII of the Civil Rights Act of 1968, as amended, commonly known as the Fair Housing Act by ensuring, to the extent required by law, that apartments are available to all persons without regard to race, color, religion, national origin, disability, sex, or familial status.[6] This policy means that, among other things, Acme Investments, Inc., d/b/a Ivanhoe House Apartments, and all their agents and employees with the responsibility for renting, managing, or administering any dwelling units must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants because of race or color.  Such agents and employees may not:

A.   Refuse to rent, refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, national origin, disability, sex, or familial status;

B.   Discriminate against any person in the terms, conditions, or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, national origin, disability, sex, or familial status;

C.   Make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, national origin, disability, sex, or familial status; or

D.   Represent to persons because of race, color, religion, national origin, disability, sex, or familial status that any dwelling is not available for inspection or rental when such dwelling is in fact so available.

Any agent or employee who fails to comply with this Nondiscrimination Policy will be subject to appropriate disciplinary action.  Any action taken by an agent or employee that results in unequal service to, treatment of, or behavior toward tenants or actual or potential applicants on the basis of race, color, religion, national origin, disability, familial status, or sex may constitute a violation of state and federal fair housing laws.  Any tenant or applicant who believes that any of the above policies have been violated by any agent or employee of the owner should contact the owner at 248-362-9699.  Any tenant or applicant who believes that any of the above policies have been violated by any owner, agent, or employee may also contact the U.S. Department of Housing and Urban Development at 1-888-799-2085, or the U.S. Department of Justice at 1-800-896-7743 or 202-514-4713.

---

[6] Acme may include, in its discretion, additional protected classes and/or state civil rights statutes in this nondiscrimination statement.

20

**Appendix B**

**<u>EMPLOYEE ACKNOWLEDGMENT</u>**

I acknowledge that on _____, 2010, I was provided copies of the

Consent Order entered by the Court in <u>Fair Housing Center of Washtenaw County, Inc., et al. v.</u>

<u>Acme Investments, Inc., et al.</u>, Civil Action No. 5:09-cv-12815 (E.D. Mich.), and the

Nondiscrimination Policy of Acme Investments, Inc., d/b/a Ivanhoe House Apartments.  I have

read and understand these documents and have had my questions about these documents

answered.  I understand my legal responsibilities and shall comply with those responsibilities.


_____
Signature

_____
Print Name

_____
Job Title

_____
Date

**Appendix C**

**<ins>FULL AND FINAL RELEASE OF CLAIMS</ins>**

      In consideration for the parties' agreement to the terms of the Consent Order they entered into in the case of <ins>Fair Housing Center of Washtenaw County, Inc., et al. v. Acme Investments, Inc., et al.</ins>, Civil Action No. 5:09-cv-12815 (E.D. Mich.), as approved by the United States District Court for the Eastern District of Michigan, and in consideration for the payment of $_____, I, _____, do hereby fully release and forever discharge Acme Investments, Inc., d/b/a Ivanhoe House Apartments, and Laurie Courtney ("Defendants"), along with their past and present insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, heirs, executors, and administrators and any persons acting under their respective direction or control from any and all fair housing claims set forth, or which could have been set forth, in the Complaint in this lawsuit that I may have had against any of them for any of Defendants' actions or statements related to those claims through the date I sign this release.

      Executed this _____ day of _____, 2010.


                                      _____
                                            [Signature]


                                      _____
                                          [Print Name]

**Appendix D**

## FULL AND FINAL RELEASE OF CLAIMS

The Fair Housing Center of Washtenaw County, Inc., d/b/a/ Fair Housing Center of Southeastern Michigan ("FHC"), its agents, executors, administrators, successors and assigns, pursuant to the terms, provisions, and conditions of the Consent Order approved by the United States District Court for the Eastern District of Michigan on _____, 2010, in the case of Fair Housing Center of Washtenaw County, Inc., et al. v. Acme Investments, Inc., et al., Civil Action No. 5:09-cv-12815 (E.D. Mich.) ("lawsuit"), and in consideration of the payment of $40,000.00, does fully, finally and forever release, discharge, and hold harmless Acme Investments, Inc., and Laurie Courtney (hereinafter "Defendants"), along with their insurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, former employees, heirs, executors, and administrators and any persons acting under their respective direction or control (hereinafter "Releasees"), from any and all fair housing claims set forth, or which could have been set forth, in the lawsuit that FHC may have against Defendants or any of the Releasees for any of Defendants' actions or statements related to those claims through the date of the Consent Order, including claims for damages (both compensatory and punitive), costs, fines and attorneys' fees.

Executed this _____ day of _____, 2010.

_____        _____
[Print Name]                                [Signature]

23